IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **In re:** <br><br> JACOB R. LARSEN and <br> TIFFANY K. LARSEN, <br><br> **Debtors.** | **Bankruptcy Case** <br> **No. 04-42461** |
| R. SAM HOPKINS, Trustee, <br><br> **Plaintiff,** <br><br> vs. <br><br> MERLINS INSULATION, LLC, <br> d/b/a QUALITY INSULATION, <br> an Idaho limited liability company, <br> ELMAR CORPORATION, an <br> Idaho corporation; and JEFF <br> LARSEN; <br><br> **Defendants.** | **Adv. Proceeding** <br> **Case No. 05-8092** |

### MEMORANDUM OF DECISION

Jim Spinner, SERVICE, SPINNER & GRAY, Pocatello, Idaho, for Plaintiff.

Bron Rammell, DIAL, MAY & RAMMEL, Pocatello, Idaho, for Defendants.

MEMORANDUM OF DECISION - 1

This is a preference action under § 547(b)[1] of the Bankruptcy Code. Plaintiff, Chapter 7 Trustee R. Sam Hopkins, seeks to recover $1,805.00 from Defendant Merlin's Insulation. Defendant contends the payment was not a preference, and asserts several § 547(c) affirmative defenses to the action. The relevant facts are stipulated and the parties submitted the issue to the Court for disposition without a trial based on their briefs.[2] *See* Docket Nos. 22–25.

After carefully reviewing the parties' submissions, the Court concludes that Plaintiff has not proven that the target transfer was a preference, and it therefore may not be recovered. This Memorandum constitutes the Court's findings of fact, conclusions of law and disposition of the issues. Fed. R. Bankr. P. 7052.

## Facts[3]

Debtors Jacob and Tiffany Larsen owned and operated a residential construction company. In April 2004, Debtors accepted Defendant's $2,655.00

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, in effect prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

[2] Defendant did not file a Reply brief.

[3] These factual findings are taken from the parties' stipulation. Docket No. 22.

MEMORANDUM OF DECISION - 2

bid to install insulation in a home Debtors were constructing in Idaho Falls that the parties refer to as the "Otter Trail house." Ex. 1, Stipulated Facts, Docket No. 22. [4] Defendant started work on the project, and on May 3, 2004, sent Debtors an invoice indicating $1,805.00 was due for installation of the wall insulation, though the attic insulation was not yet complete. Ex. 4, Stipulated Facts, Docket No. 22. On June 3, 2004, Defendant sent another invoice to Debtors indicating all work was now complete, and that payment in full for the contract was due. Ex. 5, Stipulated Facts, Docket No. 22.

Ordinarily, Defendant expects payment for its services to contractors within ten days of project completion. All of Defendant's services were performed between April 14 and June 1, 2004. Stipulated Facts at ¶ 6, Docket No. 22. In deposition testimony, Brian Blad, Defendant's manager, testified that it was Defendant's practice in collecting late payments on accounts to call the customer a few times, and then to file a state law lien against the property only if the payment issue could not be satisfactorily resolved. When Debtors' account became past

---

[4] The parties' stipulation does not establish whether Debtors owned the Otter Trail house, or were building the house for some other owner. This omitted fact is critical in analyzing the issues in this action. The house and property are listed in Debtors' bankruptcy schedule of assets. Sched. A, Bankr. Case No. 04-42461, Docket No. 1. In the absence of proof by Plaintiff to the contrary, the Court presumes Debtors owned the house.

MEMORANDUM OF DECISION - 3

due, Defendant's employee called Debtors and informed them that if the account was not paid, Defendant would file a lien against the house.

On August 24, Debtors gave Defendant a check for $1,805.00. Debtors indicated they would pay Defendant the remaining balance of $850.00, and based on the partial payment and this assurance of final payment, Defendant elected not to file a lien against the house within the statutory period. Depo. of Brian Blad at 21–22. Debtors' $1,805.00 check was deposited in Defendant's account on August 25, 2004. Ex. 3, Stipulated Facts, Docket No. 22.

Debtors filed a chapter 7 bankruptcy petition on November 23, 2004. Plaintiff is the trustee of their bankruptcy estate. The parties agree that "the payment [from Debtors to Defendant] was made on or within ninety (90) days before the date of the filing of the petition." Stipulated Facts at ¶ 18, Docket No. 22. In addition, the parties have stipulated that, with one exception discussed below, all of the elements of a preference under § 547(b) can be established by Plaintiff with respect to this payment. *Id.*

### Discussion and Disposition of the Issues

Defendant relies upon several arguments as to why the $1,805.00 payment it received from Debtors can not be avoided by Plaintiff as a preference, including several defenses under § 547(c). However, because the Court concludes

MEMORANDUM OF DECISION - 4

Plaintiff can not show the payment was a preference under § 547(b), it is unnecessary to examine any of the subsection (c) defenses.

Plaintiff bears the burden of proof by the preponderance of the evidence as to each element of a preferential transfer under § 547(b). 11 U.S.C. § 547(g); *Arrow Electornics, Inc. v. Justus* (*In re Kaypro*), 218 F.3d 1070, 1073 (9th Cir. 2000); *Hopkins v. Nord* (*In re Kent*), 04.3 I.B.C.R. 113, 114 (Bankr. D. Idaho 2004). Defendant stipulated that each element of the Plaintiff's case can be established except the requirement of § 547(b)(5), which provides the target transfer must be one:

> (5) that enables such creditor to receive more than such creditor would receive if–
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5).

The parties stipulated that "the amount received by Merlins is more than it would receive if it participated in the bankruptcy as an *unsecured* creditor." Stipulated Facts, ¶ 18, Docket No. 22 (emphasis added). However, Defendant argues that had it not received the payment from Debtors, it would have filed a

MEMORANDUM OF DECISION - 5

statutory materialman's lien, and as a result, it would have been a fully secured creditor in any chapter 7 case. Since as a secured creditor it would have presumably have been paid in full, Defendant contends that Plaintiff has not shown that it received more than it would have received in a chapter 7 case had the transfer not occurred.

Plaintiff disagrees. He maintains that because Defendant had recorded no lien when it received payment, under the § 547(b)(5) analysis, the Court must analyze Defendant's status as an unsecured creditor. When the disposition to unsecured creditors is compared to what Defendant received under this analysis, Plaintiff contends he has shown that a preference occurred.

Section 547(b)(5) is a central element of the preference section because it requires a comparison between what the creditor actually received and what it would have received in the resulting chapter 7 case. A creditor need not return a prebankruptcy payment if it can not be shown that it fared better in comparison to the debtor's other creditors who must look to the bankruptcy estate for payment. Alan N. Resnick & Henry J. Sommers, 5 COLLIER ON BANKRUPTCY ¶ 547.03[7] , 547-45(15th ed. rev. 2005) (footnotes omitted); *In re Powerline Oil Co.,* 59 F.3d 969, 972 (9th Cir. 1995) (holding that a transfer is preferential only if

MEMORANDUM OF DECISION - 6

creditor receives a "greater percentage" of its claim than if the transfer had not been made and the creditor participated in the distribution of estate assets).

In this case, Plaintiff's analytical approach is flawed. As Collier explains:

> Section 547(b)(5) codifies the Supreme Court's holding in *Palmer Clay Products Co. v. Brown* [, 297 U.S. 227, 56 S.Ct. 450 (1936)]. Whether a particular transfer is preferential is to be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results." All other elements of a preference in paragraphs (1) through (4) of section 547(b) are determined at the time the transfer is made.

5 COLLIER ON BANKRUPTCY at ¶ 547.03[7], 547-45(footnotes omitted). Using the proper analysis, as opposed to examining Defendant's rights as they existed on the date it received the target payment, the Court must examine what Defendant's rights *would have been* in Debtors' bankruptcy case assuming the payment had not been made.

Several courts have addressed whether a payment in satisfaction of a debt that thereby extinguished the creditor's ability to claim a state law lien can qualify as a preference. The majority of these courts have concluded that a payment received in satisfaction of an unperfected mechanic's or materialman's lien is not a preference because it does not diminish the bankruptcy estate.

MEMORANDUM OF DECISION - 7

The Ninth Circuit addressed a similar set of facts in *Greenblatt v. Utley*, 240 F.2d 243 (9th Cir. 1956), in an action under the Bankruptcy Act. In *Greenblatt*, the creditor performed work on the debtor's land that entitled the creditor to assert a state statutory lien against the property. The creditor received payment from the debtor within the preference period, so no lien was perfected by the creditor. In the debtor's subsequent bankruptcy case, the trustee sought to recover the payment to the creditor. The Ninth Circuit concluded that the creditor held an inchoate statutory lien under state law at the time the creditor received the debtor's payment. *Id.* at 247. Because of the rights conferred by the inchoate statutory lien, the Court held that the transfer was not avoidable. *Id.* Although *Greenblatt* was decided under the Act, not the Code, the court's approach is applicable here given the similar treatment of preferences under both statutes. *See The Official Comm. of Unsecured Creditors of 360Networks (USA) Inc. et al. v. AAF-McQuay Inc. et al.* (*In re 360Networks (USA) Inc.*), 327 B.R. 187, 190–91 (Bankr. S.D.N.Y. 2005) (concluding that the Act and the Code treat preferences similarly and, in addressing this particular issue, Act case law retains its validity).

In *360Networks,* the bankruptcy court addressed the same issue presented by this action. The court held "that a payment in satisfaction of an inchoate statutory lien is not avoidable as a preference where perfection of the lien would not have been avoidable." *360Networks*, 327 B.R. at 189. In addition to its

MEMORANDUM OF DECISION - 8

reliance upon the reasoning of *Greenblatt,* the court cited *Ricotta v. Burns Coal & Bldg. Supply Co.*, 264 F.2d 749 (2d Cir. 1959), which held that "payment itself should not be less secure than the lien which could have secured it."  *360Networks*, 327 B.R. at 190 (quoting *Ricotta*, 264 F.2d at 750–51.).  The *360Networks* court adopted the two-prong inquiry from *Ricotta* to determine if an inchoate lienholder should be treated as a secured creditor in a preference action:

> [P]ayments made to the holder of an inchoate statutory lien during the preference period are not avoidable where, at the time of the payment the lienholder: i) remained eligible to perfect the lien pursuant to relevant State law, and ii) such perfection would not otherwise have been avoidable under the Bankruptcy Code.

*Id.* at 193.

A recent decision from the Tenth Circuit Bankruptcy Appellate Panel approved of *360Networks* and applied the same two-pronged inquiry.  *Bryant v. JCOR Mech., Inc.* (*In re The Electron Corp.*), 336 B.R. 809, 812–13 (10th Cir. BAP 2006).  The panel reasoned that "as a policy matter it could not hold otherwise because '[h]olders of inchoate statutory liens would be faced with an unreasonable Hobson's choice between accepting payment or taking the commercially unreasonable step of declining payment in order to perfect an inchoate statutory lien.'" *The Electron Corp*, 336 B.R. at 813 (quoting *360Networks*, 327 B.R. at 192).

MEMORANDUM OF DECISION - 9

In *Greenblatt*, the Ninth Circuit instructed that an inchoate lien, discharged by payment within the preference period but prior to the lien's perfection under state law, may not be avoided as a preference. *Greenblatt*, 240 F.2d at 247. In applying *Greenblatt*, the Court agrees the two-pronged test developed in *360Networks* and *The Electron Corp* should be utilized.[5]

In applying the two-prong test to the facts of this action, the first requirement is met. At the time Defendant received that target payment, it could have perfected a statutory lien to secure its claim. Under Idaho law, one who supplies materials or labor for a construction project has a lien against the property for the amount due. Idaho Code § 45-501. This lien attaches when the materials are supplied or work commences, not when a claim of lien is filed. Idaho Code § 45-506. To perfect its lien as against parties other than the owner, the party claiming such a lien must record a claim of lien with the county recorder "within ninety (90) days after the completion of the labor or services, or furnishing of materials." Idaho Code § 45-507(1)–(2).

Defendant asserts had it not received the payment in issue, it would have filed a claim of lien. Plaintiff argues that the ninety-day statutory period for

---

[5] Plaintiff contends *Milchem v. Fredman* (*In re Nucorp Energy, Inc.*), 902 F.2d 729, 733–34 (9th Cir. 1990) supports Plaintiff's position that the transfer is an avoidable preference. The Court disagrees. *Nucorp* did not address the § 547(b)(5) element of a preference. Instead, that decision concerned application of the affirmative defenses found in § 547(c), and specifically, whether the release of a lien constitutes "new value."

MEMORANDUM OF DECISION - 10

perfection of a lien by Defendant to secure payment for the services at issue here began to run on May 3, 2004, when the first invoice issued. Thus, Plaintiff contends, when Debtors paid Defendant on August 24, 2004, Defendant's right to record a lien had expired.

Plaintiff's interpretation of the statute is incorrect. The Idaho courts have interpreted the lien statute "to mean that the time for filing a lien starts to run when the claimant performs his last substantial work or makes his last substantial delivery of material." *Barlow's, Inc. v. Bannock Cleaning Corp.*, 647 P.2d 766, 769 (Idaho Ct. App. 1982) (citing *Gem State Lumber Co. v. Witty*, 217 P. 1027 (Idaho 1923)). The time period to perfect a lien begins to run at completion of the project, not upon partial completion or the issuance of an invoice for partial completion.

The stipulated facts establish that Defendant's contract with Debtors required it to install insulation throughout the Otter Trail house for a total sum of $2,655.00. Ex. 1, Stipulated Facts, Docket No. 22. Defendant's May 3, 2004 invoice represented charges for the wall insulation, and indicated the attic insulation was not yet completed. *Id.* The parties stipulated that Defendant did not complete its work on the project until June 1, 2004. The ninety-day statutory period for Defendant to perfect a lien did not begin to run until that date, and thus,

MEMORANDUM OF DECISION - 11

that period had not expired on August 24, 2004, when Defendant received Debtors' check for $1,805.00.

Under the second prong of the *360Network* test, it must appear that the statutory lien, if perfected, would not have been avoidable by the trustee under § 545. The parties stipulated that had the lien been perfected, Defendant would have been fully secured on the date it received the payment. Stipulated Facts ¶ 15, Docket No. 22.[6] Implicit in this stipulation is the notion that Defendant's lien would not have been subject to avoidance by Plaintiff. This agreement is consistent with Idaho law. The lien was effective as of the date Defendant commenced its work, which the parties stipulated was April 14, 2004. Therefore, under § 545, Plaintiff would not have been able to avoid the fixing of the lien.

### Conclusion

The Court concludes Plaintiff has not established that Defendant received more by the transfer than it would have received, had the transfer not been made, as a creditor in a chapter 7 case. Because Plaintiff did not establish all the necessary elements to show the $1,805.00 transfer to Defendant was a preference, a separate judgment in favor of Defendant shall be entered.

---

[6] The Court has no other evidence regarding the value of the lien, except the parties' stipulation that it would have been fully secured.

MEMORANDUM OF DECISION - 12

Dated: August 14, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 13